**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Britt Raymond Singleterry, | No. CV-06-2380-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro; et. al., | |
| Defendant. | |

Petitioner filed a petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 on October 6, 2006. Dkt. #1. Petitioner subsequently filed a supplemental petition and a memorandum in support. Dkt. ## 3, 11. Respondents filed an answer on March 26, 2007. Dkt. #16. Petitioner filed a reply. Dkt. #19.

On October 23, 2008, Magistrate Judge Hector C. Estrada issued a Report and Recommendation (R&R) recommending that the Court deny the petition for writ of habeas corpus. Dkt. #20. Petitioner filed objections and Respondents responded. Dkt. ## 23, 25. The Court will accept the R&R and deny the petition for writ of habeas corpus.

**I.    Background.**

On March 26, 1999, Petitioner was convicted of first degree murder and child abuse. Dkt. #1 at 1. He was sentenced to life imprisonment without the possibility of parole for 35 years for first degree murder and a consecutive term of 10 years for child abuse. *Id.* The following facts leading to these convictions are taken from the opinion of the Arizona Court of Appeals. Dkt. #1-2 at 7.

Adan was born to Rochelle McElroy and Petitioner on December 2, 1996. *Id.* at 8. McElroy also had a nine-year-old son, Gabriel. *Id.* On February 1, 1997, McElroy and Petitioner took Adan to the doctor where he was diagnosed with a respiratory infection and prescribed an antibiotic. No bruises or markings were noted on Adan's skin at the time of the exam. *Id.*

Two days later, McElroy went to work and Gabriel left for school, leaving Adan alone with Petitioner. *Id.* Gabriel returned home around 3:00 pm and Adan was apparently asleep, lying in a car seat on the couch, and Petitioner was sitting on the floor nearby playing Nintendo. *Id.* Gabriel went upstairs, but about an hour later heard Petitioner yell "Oh my God. Don't let this be happening." Gabriel went downstairs and saw Petitioner trying to resuscitate Adan. Gabriel called 9-1-1. *Id.*

The first officers to arrive saw that Adan was limp, without a pulse, and not moving. *Id.* at 9. He was discolored on the left side of his face and had a yellow-brown substance in his mouth and on his clothes. *Id.* When the paramedics arrived, they observed that Adan was limp, without respiration or pulse, and grayish-blue in color. It appeared to them that Adan had not been breathing for a considerable length of time. *Id.*

Dr. Robert Ganelin pronounced Adan dead at the Maricopa Medical Center. *Id.* Dr. Ganelin believed that Adan was already dead by the time the paramedics arrived at Petitioner's home. *Id.* Dr. Ganelin observed brown-colored bruises on Adan's shoulders and buttocks as well as a reddish "battle sign" bruise behind Adan's right ear, signaling the leakage of blood and an underlying bone fracture. *Id.* Adan's fontanel was full, indicating increased pressure inside the infant's skull. Id. Adan had extensive hemorrhaging inside the retinas of both eyes. *Id.* All of this suggested that Adan had been violently shaken and had probably received a severe blow to his head. *Id.*

In addition to the above injuries, the medical examiner found a laceration on the underside of Adan's lip, consistent with something being pushed forcefully across the gum line, "pattern injuries" on the backside of the baby's scalp, bruises on the right frontal area of the scalp and near the temple, and abrasions on the knees, unusual on an infant who could

1 not yet even crawl. *Id.* at 9-10. During the autopsy, the medical examiner found 2 hemorrhaging and bruising of the lower neck muscles, blood in the spinal-cord membrane, 3 extensive bleeding inside the right portion of the scalp, bleeding between the left side of the 4 brain and the skull, a 3.5-inch fracture extending through the thickest portion of the skull, and 5 bruising of the brain itself. *Id.* at 10. All of the injuries were fresh, showing no signs of 6 healing. *Id.* The medical examiner concluded that some of Adan's injuries were caused by 7 forceful shaking, but the most severe injuries, especially the skull fracture, were caused by 8 non-accidental, blunt-force trauma. *Id.* The examiner thought it probable that there had been 9 three separate blows to Adan's head. *Id.*

10 During a two-hour tape recorded interview with investigating officers, Petitioner 11 denied that he had hurt Adan. *Id.* Petitioner said that he may have caused the bruises on 12 Adan's back when he burped Adan, that he may have cut Adan's lip when he gave Adan a 13 bottle, that he had grabbed Adan and shaken him – but only once, and that he had bounced 14 Adan on his knee when Adan's head started "bobbing around." *Id.*

15 **II.    Legal standard.**

16 The Court must undertake a *de novo* review of those portions of the R&R to which 17 specific objections are made. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court may 18 accept, reject, or modify the findings or recommendations made by the magistrate judge. 19 *See* 28 U.S.C. § 636(b)(1). A court may not grant habeas relief unless the state's adjudication 20 of the claims resulted in a decision that was contrary to, or involved an unreasonable 21 application of, clearly established federal law, as determined by the Supreme Court of the 22 United States, or resulted in a decision that was based on an unreasonable determination of 23 the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. 24 § 2254(d)(1); *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009). Because the Arizona 25 Supreme Court summarily denied review, Dkt. #1-2 at 21, this Court reviews the Arizona 26 Court of Appeals' decision as the last reasoned state court opinion. *Medina v. Hornug*, 386 27 F.3d 872, 877 (9th Cir. 2004); *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). "The 28 Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for

1 evaluating state-court rulings,' and 'demands that state court decisions be given the benefit
2 of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v.*
3 *Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

**III.    The R&R.**

Petitioner requests relief on three grounds: (1) the admission of statements made by Petitioner while in custody and in response to police interrogation and without the benefit of a Miranda warning denied Petitioner his Fifth Amendment right against self incrimination, (2) trial counsel's failure to present evidence of the involuntary nature of Petitioner's statements at the voluntariness hearing violated Petitioner's right to effective assistance of counsel under the Sixth Amendment, and (3) the admission of evidence of Petitioner's other acts was so inflammatory as to violate Petitioner's right to a fair trial under the Due Process Clause of the Fourteenth Amendment. Dkt. # 11 at 2. Judge Estrada recommends in the R&R that the Court deny the petition for writ of habeas corpus on all grounds. Dkt. #20.

**A.    Petitioner's statements to investigators.**

Forty-five minutes after Adan was taken to the hospital, Petitioner was taken by Detective Ryan from his residence to the police station where he was interviewed for an hour before he was advised of his Miranda rights and interviewed further both that day and the next day. Judge Estrada found that Detective Ryan's first interview of Petitioner does not indicate overreaching or overbearing conduct by the police. Dkt. #20 at 20. Judge Estrada further found that the first interview before Petitioner was advised of his Miranda rights was not custodial because Petitioner was free to leave, there was no police misconduct such as verbal or physical threats, and Petitioner was never confronted with evidence of guilt. *Id.* at 21-22. Judge Estrada noted that the second interview of Petitioner was properly prefaced by Miranda warnings and the third by a reminder that the Miranda warnings were still in effect. *Id.* at 22. While recognizing Petitioner's argument that despite the Miranda warnings, the statement made in these interviews were not voluntary because Detective Ryan testified that he would reframe statements or exaggerate evidence when interrogating a suspect, Judge Estrada concluded that given the totality of the circumstances, this was insufficient to render

the statements involuntary. *Id.* The judge found that the statements were admissible and the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. *Id.* Judge Estrada found Petitioner's reliance on *Missouri v. Seibert*, 542 U.S. 600 (2004), to be misplaced both because, unlike the defendant in *Seibert*, this Petitioner was not subject to a custodial interrogation during the first interview, and because *Seibert*, which was decided three years after Petitioner's conviction became final, does not apply retroactively to cases on collateral review. Dkt. #20 at 24.

### B. Effective assistance of counsel.

Petitioner argues that trial counsel was ineffective because he did not present the videotape of Petitioner's interviews to the trial court before the court ruled on the voluntariness of Petitioner's statements and because trial counsel did not call Petitioner to testify at the voluntariness hearing regarding the threats of physical force used by the police to detain him for further police questioning. Dkt. #11-2 at 13-15. In the R&R, Judge Estrada found that viewing the tape would not have helped Petitioner because a review of the transcribed interviews clearly shows that: (1) Petitioner never informed Detective Ryan that he had been previously threatened by police officers, (2) Petitioner never asked Detective Ryan if he would be permitted to go to the hospital, (3) Petitioner never asked for an attorney at any stage of any of the interviews, and (4) Petitioner never asked that questioning cease nor refused to continue answering questions. Dkt. #20 at 30. Judge Estrada further noted that even if Petitioner's statements had been suppressed, there was no reasonable probability that the result of the trial would have been different because, excluding the contested statements, the jury still had sufficient evidence that Petitioner was responsible for Adan's death. *Id.* at 31. Judge Estrada therefore found that the state court's decision denying Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law nor was it based on an unreasonable determination of the evidence presented. *Id.*

### C.     Evidence of Petitioner's other acts.

After Adan died, Gabriel was interviewed by police officers and stated that Petitioner got "upset" with Adan because he was "crying a lot," Petitioner had twice spanked Adan, on another occasion Petitioner was "frustrated" with Adan, picked him up in a "wrong manner," took Adan upstairs and "tossed" him on a bed "hard enough" to "hurt his face," and Petitioner had previously hit Adan in the head. Dkt. #11-8 at 3. At trial, Gabriel testified that he did not remember making those statements and he was impeached with transcripts of his prior statements to police officers. *Id.* at n.3. Petitioner argues that evidence of these other acts was not offered for a proper purpose and was so inflammatory that it unduly prejudiced the trial, denying Petitioner due process. Dkt. ## 11-3 at 5; 11-4 at 1-3.

The Arizona Court of Appeals held that the other acts evidence was properly admitted because it was proof that Adan's death was not an accident as Petitioner contended and thus fell into the exception in Arizona Rule of Evidence 404(b) which allows other act evidence to show an absence of mistake and accident. Dkt. #11-8 at 4-5. Although the court recognized that Rule 403 allows the court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, the court concluded that Gabriel's statements were not so prejudicial as to outweigh the probative value. *Id.* at 5.

In the R&R, Judge Estrada noted that a federal habeas court may only grant relief where an evidentiary ruling "'so fatally infected the proceedings as to render them fundamentally unfair' in violation of the petitioner's due process rights." Dkt. #20 at 35 (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)). Judge Estrada further noted that the United States Supreme Court has not held that evidence of other crimes or bad acts so infused the trial with unfairness as to deny due process of law. Dkt. #20 at 35 (citing *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991)). Judge Estrada found that it was reasonable for the state court to conclude that Gabriel's statements were reliable because they were made soon after Adan's death, Gabriel was unaware of the nature of Adan's injuries when he made the statements, and Gabriel's comments were probative on the issue of whether Adan's death was accidental. Dkt. #20 at 41. Judge Estrada concluded that based on this,

1 the state court's admission of the other acts evidence was not unreasonable and did not so
2 fatally infect the proceedings as to render them fundamentally unfair in violation of
3 Petitioner's due process rights. *Id.*

### IV. Petitioner's objections to the R&R.

Petitioner objects to the finding that Petitioner's first interview with police was not custodial and did not require Miranda warnings and therefore that *Seibert* did not apply to the facts in this case. Dkt. #23 at 2-4. Petitioner also objects to Judge Estrada's conclusion that Petitioner failed to demonstrate both deficient performance of trial counsel and prejudice under *Strickland*. *Id.* at 4-6. Finally, Petitioner objects to Judge Estrada's finding that the other acts evidence was properly admitted and not so inflammatory as to deny Petitioner a fair trial. *Id.* at 6-9.

### V. Analysis.

#### A. First interview was not custodial.

Petitioner argues that Judge Estrada erred in concluding that the first interview was not custodial because Petitioner has demonstrated that, from an objective standard, a reasonable person would not have felt free to terminate the interrogation and leave. Dkt. #23 at 2 (citing *Yarborough v. Alvarado*, 541 U.S. 652 (2004)). As discussed above, this Court reviews de novo the Magistrate Judge's conclusions to which objections are made and may grant relief only if the state's adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); 28 U.S.C. § 2254(d)(1).

The Arizona Court of Appeals determined that the trial court correctly ruled that the first interview was an investigative interview and not a custodial interrogation. Dkt. #1-2 at 13. In reaching this conclusion, the state court relied on the entire record before it which included the information before the trial judge at the time of the voluntariness hearing as well

1   as the additional information Plaintiff testified to during trial. *Id.* at 12-14.  The Arizona
2   Court of Appeals considered Petitioner's trial testimony that "Petitioner was repeatedly told
3   by the officers who arrived first at the apartment that he could not leave. . . .  When he
4   insisted on leaving anyway, he was told he would be 'physically detained' if he attempted
5   to leave before Detective Ryan arrived. . . .  After forty-five minutes of being detained
6   against his will, Detective Ryan finally arrived."  Dkt. #20 at 19 (citing R.T. 8/28/98 at 42,
7   transcript was cited by Petitioner but not submitted by parties).  For the purpose of this
8   petition, Petitioner has submitted an affidavit which contains additional information not
9   considered by the state court, essentially that Petitioner was taken to the police station by
10  Detective Ryan under the false belief that he was being taken to the hospital and that
11  Petitioner gave up attempting to go to the hospital because he felt such requests would be
12  futile after he was taken to the police station, separated from Gabriel, and questioning had
13  begun.  Dkt. #11-5 ¶¶ 5-7.

14          When determining whether a custodial interrogation has occurred, the Court should
15  consider "the language used by the officer to summon the individual, the extent to which he
16  or she is confronted with evidence of guilt, the physical surroundings of the interrogation,
17  the duration of the detention and the degree of pressure applied to detain the individual."
18  *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).  The Court of Appeals noted
19  that the interview took place at the police station, but held that this fact alone is not
20  dispositive.  Dkt. #1-2 at 13.  The Court of Appeals found that Petitioner voluntarily agreed
21  to accompany Detective Ryan to the police station, they drove to the station in an unmarked
22  car, and the purpose of the interview was fact-finding concerning the death of a child.
23  *Id.* at 12.  The Court of Appeals noted that once Petitioner became a suspect, he was given
24  the Miranda warnings.  *Id.*  In addition, as Judge Estrada noted, Detective Ryan was not in
25  uniform, Gabriel accompanied Petitioner to the police station, Petitioner sat in the front seat
26  during the drive to the station, Petitioner was not handcuffed, the investigative interview
27  lasted only an hour, and Detective Ryan testified that if Petitioner had asked to go to the
28

1 hospital during the first hour of the interview he would have been allowed to do so, but
2 Petitioner never asked. Dkt. #20 at 9, 20-21.

3 Petitioner has failed to demonstrate that the Court of Appeals' decision is either contrary to, or an unreasonable application of, clearly established federal law. The state courts understood Miranda and the concept of custodial interrogations. More important is the question of whether the Court of Appeals' decision was unreasonable in light of the evidence. This Court concludes that it was not. The facts discussed above indicate that Petitioner voluntarily accompanied Detective Ryan to the police station, was not restrained, and was questioned about the facts surrounding a child's death in a non-threatening environment without force or coercion. The fact that the first officers to arrive at the scene insisted that Petitioner – the only adult present – remain until a detective arrived does not render the Court of Appeals' decision unreasonable. Even when Petitioner's new affidavit is considered, the Court of Appeals' decision that the first interview was non-custodial is not unreasonable.

**B.     Trial counsel did not render ineffective assistance.**

Petitioner next objects to Judge Estrada's finding that trial counsel was not ineffective. Petitioner argues that trial counsel's performance was deficient because counsel failed to call Petitioner to testify during the voluntariness hearing and that Petitioner was prejudiced because if Petitioner had testified, his incriminating statements would have been suppressed. Dkt. #23 at 5-6. Specifically, Petitioner objects to Judge Estrada's finding that even if Petitioner's statements had been suppressed, it is extremely doubtful that the outcome of the trial would have been different because there was still enough evidence to convict Petitioner. *Id.* at 5; Dkt. #20 at 31. Petitioner argues that if all of his statements were suppressed, the remaining evidence was purely circumstantial and, therefore, the state would not have been able to prove his guilt beyond a reasonable doubt. Dkt. #23 at 5-6.

To prevail on his claims of ineffective assistance of counsel, Petitioner must show that his counsel's representation fell below an objective standard of reasonableness and that Petitioner was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

1  Petitioner can establish prejudice by showing that there is a "reasonable probability" that the
2  outcome of the proceedings would have been different but for counsel's deficient
3  performance. *Id.* ("The benchmark for judging any claim of ineffectiveness must be whether
4  counsel's conduct so undermined the proper functioning of the adversarial process that the
5  trial cannot be relied on as having produced a just result."). In order for this Court to grant
6  habeas relief, Petitioner must show that the state court's ruling was an unreasonable
7  application of *Strickland*. *West v. Schriro*, No. CV-98-218-TUC-DCB, 2007 WL 4240859,
8  at *7 (2007).

9  Petitioner raised his claim of ineffective assistance of counsel in a petition for post-
10 conviction relief. The decision on that petition stated:

> This claim must fail because no showing has been made that such testimony at a pre-trial hearing would have changed the ultimate verdict. In addition, the voluntariness of the petitioner's statements was reviewed with the entire record on appeal and the admission of the petitioner's statements was deemed proper by the Court of Appeals. The Petitioner has failed to present any showing that he was prejudiced by trial counsel's decision not to present this testimony at the voluntariness hearing. Dkt. #1-2 at 26.

15 In addition, as discussed above, the Arizona Court of Appeals evaluated the voluntariness
16 of Petitioner's statements in light of his testimony at trial and found that the statements were
17 properly admitted. Furthermore, this Court found above that even considering Petitioner's
18 affidavit, there was no error in admitting Petitioner's statements made to Detective Ryan.
19 It is highly unlikely that even if Petitioner had testified at the voluntariness hearing, the trial
20 court would have suppressed Petitioner's statements. And even if the statements were
21 suppressed, there was sufficient evidence to convict Petitioner without the statements.
22 Although Petitioner argues that the remaining evidence against him was not sufficient
23 because it was all circumstantial, direct and circumstantial evidence have equal probative
24 value and criminal convictions may rest solely on circumstantial proof. *State v. Webster*,
25 170 Ariz. 372, 374 (Ariz. Ct. App. 1991). The medical evidence showed that Adan had
26 suffered injuries consistent only with serious physical abuse. Adan was in Petitioner's
27 custody before his death. Gabriel testified that Petitioner had been abusive toward Adan in
28 the past. There is no reasonable probability that the outcome of the trial would have been

different if counsel had called Petitioner to testify at the voluntariness hearing. The state court's application of *Strickland* was not unreasonable.

**C.     Other acts evidence did not violate due process.**

Finally, Petitioner argues that Judge Estrada incorrectly determined that evidence of Petitioner's other acts was properly admitted and that Judge Estrada failed to address the argument that the evidence was not more probative than prejudicial. Dkt. #23 at 6-7. Petitioner does not address Judge Estrada's finding that the United States Supreme Court has not held that evidence of other crimes or bad acts so infused the trial with unfairness as to deny due process of law. Dkt. #20 at 35.

Although Petitioner insists that evidence of Petitioner's other acts was not admitted for a proper purpose, it is clear that Rule 404(b) permits the admission of other act evidence to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Gabriel's statements that Petitioner had previously abused Adan contradicted Petitioner's defense that Adan's injuries were an accident. The other acts evidence was admitted for a proper purpose.

In affirming the trial court's decision to admit the other acts evidence, the Court of Appeals noted that not only was the other acts evidence admitted for the proper purpose of showing lack of accident, but was also highly probative of the non-accidental nature of Adan's death. Dkt. #1-2 at 16. Although Petitioner disputes the probative value of Gabriel's statements because of Gabriel's later contradictions at trial, Gabriel's statements were made soon after Adan's death and before Gabriel knew the nature of Adan's injuries. Petitioner further argues that Gabriel's statements unfairly prejudiced the jury because jurors would feel the tragedy of the loss of a child and want to somehow make things better by punishing Petitioner. Dkt. #23 at 9. But Petitioner has not explained how Gabriel's testimony, as opposed to the other evidence in the trial, would give rise to this sentiment. Moreover, Rule 403 addresses the risk of unfair prejudice. Probative evidence that is fairly prejudicial to the defense may be admitted. Gabriel and the prosecutor who took his statement were available for cross-examination at trial. The Court of Appeals did not err in concluding that the

probative value of Gabriel's statements was not outweighed by the risk of unfair prejudice. Petitioner has not shown a due process violation.

**IT IS ORDERED:**

1. The Magistrate Judge's report and recommendation (Dkt. #20) is **accepted**.
2. Petitioner's petition for writ of habeas corpus (Dkt. #1) is **dismissed**.
3. The Clerk is directed to **terminate** these actions.

DATED this 3rd day of March, 2009.

David G. Campbell
United States District Judge